## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BARBARA BOGGS, | **:** | |
| | **:** | |
| v. | **:** | |
| | **:** | Civil Action No. CCB-06-2629 |
| MO'S EASTERN AVE., INC., | **:** | |
| | **:** | |

...o0o...

### MEMORANDUM

Plaintiff Barbara Boggs claims damages in a sexual harassment action filed against her former employer, Mo's Eastern Ave., Inc. ("Mo's").  Boggs alleges she was subjected to a hostile work environment and was constructively discharged in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq*.  Now pending is Mo's' motion to dismiss.  The parties have fully briefed the motion and no hearing is necessary.  *See* Local Rule 105.6.  For the reasons that follow, I will deny Mo's' motion to dismiss as to Counts 1 and 2.[1]

### BACKGROUND

Plaintiff Boggs began working at Mo's, a restaurant in Baltimore City, as a waitress on September 7, 2005.  Beginning her first day at work, Boggs alleges that a co-worker (name unknown - hereinafter referred to as John Doe) "growled at [her] in a sexual manner and repeatedly made offensive sexual comments and/or noises."  (Compl. at ¶ 8.) On Boggs's second day of work, she alleges that Doe "trapped her in Defendant's walk-in refrigerator and touched and groped her until she was able to fight him off."  (*Id*.)   That same day, as she was leaving

---

[1]The plaintiff has conceded that Count 3 should be dismissed.

work, she claims that Doe was standing by her car and "staring at her in a sexual manner." (*Id.*; Pl.'s Opp. Mem. at 2.) As she approached her car, Doe began making inappropriate sexual noises. (*Id.*)

Boggs states that she notified her supervisors of Mr. Doe's behavior.[2] According to Boggs, her supervisors Terri and Chrissie (last names unknown) laughed at her and said "Just hit him" and "Just beat the sh** out of him." (Compl. at ¶ 10.) Doe's behavior continued on the 8th and 9th, which prompted plaintiff's husband to contact Boggs's supervisors on September 10th about Doe's conduct. Terri, one of Boggs's supervisors, allegedly told Boggs's husband that Doe had been disciplined and consequently did not work on September 8, 2006. Boggs claims that Doe faced no such discipline and in fact Boggs worked with Doe on the 8th. (*Id.* at ¶ 17.) As a result of Doe's sexual harassment, and Mo's tolerance of Doe's behavior, Boggs reports that she felt compelled to resign her position on September 10.

Plaintiff claims that she filed a Charge of Discrimination with the EEOC alleging violations of Title VII on November 12, 2005. (Compl. at ¶ 5.) Boggs received a Notice of Right to Sue on April 17, 2006. (*Id.*) Plaintiff filed this complaint on October 6, 2006, alleging sexual harassment and hostile work environment in violation of Title VII. (*Id.* at ¶¶ 6-14.) Boggs further alleged that she was constructively wrongfully terminated and that John Doe was negligently hired and retained. (*Id.* at ¶¶ 15-26.) Defendant removed to this court and instead of filing an answer, defendant moved to dismiss the complaint. Plaintiff subsequently conceded that it could not make out a negligent retention claim and dropped that claim from the complaint.

---

[2]While Boggs's complaint does not specify whether Boggs complained of Doe's behavior on September 7th or 8th, the exact dates that Boggs notified her supervisors will, of course, be important and need to be developed through discovery.

## ANALYSIS

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244. To survive a motion to dismiss, however, a complaint must "in light of the nature of the action ... sufficiently allege each element of the cause of action so as to inform the opposing party of the claim and its general basis." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005). In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions).

A.      Sexual Harassment

Under Title VII, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. §2000e-2(a)(1).

3

"When [a] workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). To state a prima facie case of sexual harassment based on an abusive or hostile work environment, a plaintiff must show: (1) that she was harassed because of her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (citing *Wrightson v. Pizza Hut of Am.*, 99 F.3d 138, 142 (4th Cir. 1996)). The offensiveness of the work environment is evaluated from both the subjective standpoint of the plaintiff and the objective standpoint of a reasonable person in the plaintiff's position. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In determining whether the environment was hostile, factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work environment." *Id.* at 787-88 (citing *Harris*, 510 U.S. at 23). The standards for judging hostility are such that complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are filtered out so that Title VII does not become a "general civility code." *Faragher*, 524 U.S. at 788 (citations omitted).

Mo's concedes that Boggs was harassed because of her sex, and that the harassment was unwelcome, but argues that Boggs's allegations are insufficient to satisfy the third and fourth prongs of the *Harris* steps. Specifically, Mo's argues that because Boggs only worked at Mo's

4

for three days, and only had one instance where she was physically touched, she has failed to allege that the harassment was severe or pervasive enough to constitute an abusive working environment.  Mo's further argues that liability cannot be imputed to itself because Boggs worked for only three days and, thus, Mo's did not have the opportunity to take prompt remedial action.

As a matter of law, I find that Boggs's allegations satisfy the third prong of the *Harris* test, as her allegations are similar to behavior that the Fourth Circuit has found sufficient to establish actionably severe or pervasive harassment.  It is established that simple teasing, sporadic use of abusive language, off-hand comments, and gender related jokes do not generally amount to discriminatory changes in the terms and conditions of employment.  *Faragher*, 524 U.S. at 788.  When abusive or threatening language is coupled with either actual or threatened physical battery or violence, however, an abusive workplace will be established.  For example in *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000), the court held that defendant's conduct was severe because his verbal harassment was accompanied by physical threats, such as "or else, you'll see what will happen to you" and a remark about "slit[ting] a woman's throat."  *See also Beard v. Flying J. Inc.*, 266 F.3d 792, 797 (8th Cir. 2001) (affirming judgment for plaintiff based on employee's touching plaintiff's breasts over a three-week period).

Whether conduct is severe or pervasive enough to constitute a hostile work environment is "quintessentially a question of fact for the jury."  *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 199-200 (4th Cir. 2000) (citations omitted).  Here, John Doe coupled what plaintiff understood to be sexual grunts and stares with a serious physical assault.  Doe's

trapping of Boggs in a walk-in refrigerator and groping and touching her until Boggs was able to

fight Doe off certainly qualifies as physical violence.  Courts have held that even a single act of

serious sexual violence can create an abusive work environment.  *See, e.g., Ferris v. Delta Air

Lines, Inc.*, 277 F.3d 128, 136 (2nd Cir. 2001) (finding an abusive work environment was created

where employee raped plaintiff on a single occasion).  While it is true that Boggs only worked at

Mo's for three days, conduct is actionable if it is *either* "sufficiently severe or pervasive" to alter

the conditions of employment.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

While Boggs's working conditions may not have been sufficiently pervasive (though she does

claim to have been harassed every day that she worked at Mo's), the single act of alleged sexual

assault is sufficiently severe to sustain a hostile work environment claim at this stage of the case.

I also find that liability may be imputed to Mo's for Doe's harassment.  In a case of

sexual harassment by co-workers, an employer may be liable if the employer (or his agent)

"knew or should have known of the harassment, and failed to take effective action to stop it."

*Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 333-34 (4th Cir. 2003).  Here, there is no

question that Mo's agents had knowledge of Doe's behavior.  Boggs alleges she notified her

supervisors on or around September 7, which was her first day of work.  Boggs complains that

the harassment at the hands of Doe continued after her complaint to her supervisors.  When

Boggs felt that the response from the supervisors was insufficient, her husband called on

September 10, and again complained about the harassment at the hands of Doe.  Thus, the only

question is whether Mo's took effectual action to correct the situation.

Mo's argues that because Boggs quit only two or three days after raising her concerns

about Doe's behavior, Mo's had no opportunity to take proper effectual action.  But if what

Boggs alleges is true, not only did Mo's not take proper remedial steps, it took no steps at all after Boggs complained. Instead, when Boggs notified her supervisors about Doe's actions on the 7th, her supervisors laughed at her and told her to try to fend Doe off herself. When Boggs's husband contacted her supervisors, they allegedly lied to him and told him that Doe was disciplined and did not work on the 8th, though Boggs claims to have worked with Doe on the 8th. Thus, according to Boggs's version of the events, it appears that Mo's was not investigating the incidents involving Boggs and Doe; indeed, Boggs alleges that her supervisors attempted to downplay the incidents when she first contacted them. As such, Boggs has properly pled that liability for Doe's actions can be imputed to the employer. *See Howard v. Winter*, 446 F.3d 559, 569-70 (4th Cir. 2006) (finding an issue of material fact as to whether the employer took proper remedial steps after actual notice of harassment where employer "did not get to the bottom of the allegations" and did not "attempt[] to learn the specifics of the [plaintiff's] allegations.") During discovery, Mo's will, of course, have an opportunity to explain what steps, if any, it took or planned to take, to investigate Boggs's complaints.

B.    Wrongful Termination

Boggs also alleges that she was constructively discharged. To recover under a theory of constructive discharge in this Circuit, a plaintiff must show that her "employer deliberately made an employee's working conditions intolerable and thereby forced [her] to quit her job." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1350 (4th Cir. 1995) (internal citations and quotations omitted). Plaintiffs in constructive discharge claims must allege "something more" than regular discrimination; they "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-

47 (2004) (finding that defendants' explicitly sexual gestures and comments qualified as "something more" than ordinary discrimination for constructive discharge purposes.)

Boggs has properly alleged that "something more." This is not a case where Boggs was merely "unreasonably sensitive to [her] working environment." *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir. 1993). Her allegations of sexual assault are much more than the "mere unpleasantness" the defendant claims they are (*see* Def.'s Reply, at 7-8); they satisfy the requirement for intolerable working conditions, as a factfinder could find that "a reasonable person would have felt compelled to resign" based on Doe's actions. *See Suders*, 542 U.S. at 147; *Hukkanen v. Int'l Union of Operating Engineers, Hoisting & Portable Local No. 101*, 3 F.3d 281, 284-85 (3rd Cir. 1993) (affirming trial court finding that plaintiff was constructively discharged when she was groped sexually and threatened with rape).

To properly allege constructive discharge, Boggs must also claim that the employer deliberately acted to force her to quit. Deliberateness may be proven by actual or circumstantial evidence, however, and an employer "must necessarily be held to intend the reasonably foreseeable consequences of its actions." *Martin*, 48 F.3d at 1355; *Hukkanen*, 3 F.3d at 285 ("if [plaintiff's] resignation was a reasonably foreseeable consequence of [defendant's] harassment, [defedant's] actions were necessarily taken with the intention of forcing plaintiff to quit.") (internal citations and alterations omitted). It is possible Boggs will be able to prove that her resignation in the face of defendant's inaction after her complaints of serious harassment was a reasonably foreseeable consequence of defendant's actions, though, of course, at this early stage of litigation, it is impossible to assess defendant's motivation. As such, Mo's' motion to dismiss on the constructive discharge claim also will be denied.

8

A separate order follows.


  January 17, 2007                                                            /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge